(69 Misc. Rep. 464.)

### PUBLIC BANK OF NEW YORK CITY v. OSHINSKY et al.

(Supreme Court, Special Term, New York County. November, 1910.)

1. MORTGAGES (§ 419*)—ASSIGNMENT—FORECLOSURE.

   A bond and mortgage payable in installments was assigned as collateral for a loan represented by notes of the assignor, who retained possession of the mortgage and collected the interest and principal as it became due. The assignee of the bond and mortgage assigned it to plaintiff. The assignments were duly recorded, and, on default in payment of interest and an installment of principal, an action was brought by the mortgagee to foreclose, which was settled, but not dismissed. The property was then conveyed to the mortgagor's cousin with knowledge of the facts. *Held*, that the assignee of the mortgage was entitled to judgment in foreclosure.

   [Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 419.*]

2. MORTGAGES (§ 251*)—ASSIGNMENT—RIGHTS OF ASSIGNEE.

   Where a mortgagee assigned the bond and mortgage as collateral for a loan, the rights of the assignee were paramount to those of the mortgagee, and his collections of payments on the mortgage were subject to the rights of the assignee.

   [Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 251.*]

Action by the Public Bank of New York City against Israel M. Oshinsky and others. Judgment for plaintiff.

H. Flugelman, for plaintiff.
C. Burnstein, for defendants.

McCALL, J. This is an action brought to foreclose a mortgage under unusual circumstances, and it becomes necessary somewhat fully to review the facts as established by the evidence. On December 2, 1907, the defendant Israel M. Oshinsky was the owner of the premises covered by the mortgage being foreclosed herein, and the defendant Maurice J. Burstein, a practicing physician and an admitted attorney, was the owner and holder of the bond and mortgage which are the subject of this action. On said date Mr. Burstein borrowed $10,000 from one Joseph S. Markus, and for the purpose of securing the payment of the same gave to Mr. Markus four notes, two, each of $1,000, due January 2, 1908, and July 1, 1908, respectively, one for $1,500, due November 1, 1908, and one for $6,500, due February 1, 1909, and assigned to Mr. Markus the bond and mortgage sued on herein as collateral security. The mortgage was payable in installments. Those installments falling due after assignment were $1,200 on January 1, 1908, $1,100 on May 1, 1908, $1,750 on November 1, 1908, and $1,750 every six months thereafter on the 1st days of May and November of each and every year. The physical possession of the bond and mortgage remained with Dr. Burstein, who collected the interest and the installments of principal as the same became due. By an assignment dated April 22, 1908, Mr. Markus assigned the bond and mortgage to the plaintiff. The first assignment to Markus was recorded December 2, 1907, and the assignment to the plaintiff was recorded June 15, 1908. The first three notes were paid. In November, 1908, notwithstanding the assignment of the mortgage then of record,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an action was brought by Dr. Burstein against Mr. Oshinsky for the foreclosure of the mortgage in suit on a default then made under the mortgage. Thereafter Dr. Burstein himself attempted to waive the default, and some arrangement was made whereby the foreclosure suit was settled, although never discontinued, and the property was conveyed to Sarah Roth, a cousin of Dr. Burstein.

The testimony shows that Dr. Burstein began the foreclosure suit by filing a lis pendens November 10, 1908. He immediately began negotiations with Oshinsky, the result of which was, in the language of Dr. Burstein, that:

"Oshinsky was to receive a month's rent, which amounted to about $1,100, and $200 besides for the deed to me, and Miss Roth was to pay up the installment of $1,750 and $1,860 interest. I was to pay, however, the taxes and the mortgage interest. That was all straightened out on the 11th of November."

All this was done a day or so before the deed was delivered. While Miss Roth testified that she owned the property, she stated that all she gave for it was $3,810, which she turned over to her cousin, the doctor, to pay the installment and the interest then due on the mortgage, and $200 to Oshinsky. This money, which she turned over to him, seemed to have been a deposit with the doctor, for she testified that she got the cash to pay for the property from the doctor, and then explained:

"I had money with the doctor, and whenever I needed money I always used to go to the doctor and he used to give it to me."

She did not know how many tenants were in the property. Her cousin, Dr. Burstein, paid the taxes, and the doctor's wife has been collecting the rents. While not passing upon the question, I am not convinced of the good faith of this transaction. The facts and circumstances as established by the evidence preclude, to my mind, the possibility of Sarah Roth being a bona fide innocent purchaser of this property. The bond and mortgage sued on in this action were assigned for the purpose of securing this loan of $10,000. If the contention of Dr. Burstein should be accepted, it would nullify that purpose. If one can assign a bond and mortgage as security for a debt and thereafter so manipulate that security as to render it worthless, it is hard to understand the purpose of the assignment. The rights of the assignee of this bond and mortgage were certainly paramount to the rights of the assignor to the extent of that loan, and, if the assignor collected the interest and installments on the mortgage, he did so subject to those rights. To say that he could collect the interest and installments on the mortgage and put them in his pocket, and then refuse to pay the notes and claim that there was no default in the mortgage, would make the pledge of the bond and mortgage useless. There was a default in the payment of interest and the installment due November 1, 1908, which the assignor attempted to waive by taking title in the name of his cousin. If one controls the fee as well as the mortgage, payments on the mortgage to prevent defaults would be a mere matter of bookkeeping, and it would open the door to gross frauds on honest

lenders of money. Judgment for the plaintiff, with costs. Submit findings and decision in accordance with this opinion.

Judgment for plaintiff.